# UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE MARK A. BARNETT,  CHIEF JUDGE**

| | | |
|---|---|---|
| SUNCITY METALS AND TUBES PRIVATE LIMITED | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 25-00222 |
| | ) | |
| UNITED STATES, | ) | PUBLIC |
| | ) | VERSION |
| Defendant. | ) | |
| And | ) | |
| | ) | |
| FELKER BROTHERS CORPORATION | ) | |
| Defendant-Intervenor. | ) | |
| | ) | |

MEMORANDUM OF POINTS AND AUTHORITIES  IN SUPPORT OF MOTION FOR
JUDGMENT ON THE AGENCY RECORD PURSUANT TO RULE 56.2 BY PLAINTIFF
SUNCITY METALS AND TUBES PRIVATE LIMITED

John J. Kenkel
International Trade Law
Counselors, PLLC
8647 Richmond Hwy.
Suite 623
Alexandria, Va. 22309
*Counsel to Suncity Metals and
Tubes Private Limited*

Dated: April 3, 2026

**TABLE OF CONTENTS**

I.    INTRODUCTION…………………………………………………………………….1

II.   STATEMENT PURSUANT TO RULE 66.2 (c)...........................................................1

      A.  The Administrative Determination under Review ............................................1

      B.  Issues of Law Presented ..................................................................................2

      C.  Summary of Arguments ...................................................................................2

III.  Statement of Facts Relevant to the Issues ..................................................................2

IV.   Standard of Review .....................................................................................................2

V.    Argument.....................................................................................................................5

      A.  Facts…………………………………………………………………………5

          i.    Suncity did not recover or earn income regarding U.S. expenses for ocean
                freight or marine insurance beyond that reported in the DDP price
                contained in Field 18.3 of the Section C database……………………..6

      B.  Argument………………………………………………………………………9

          i.    Suncity did not earn additional income related to ocean freight or marine
                insurance beyond what is contained within the DDP price……………..9

          ii.   Since Suncity did not earn additional income related to ocean freight or
                marine insurance, there is nothing to "cap" (no income to limit via
                expenses) in Commerce's calculation methodology……………………10

          iii.  Commerce' SAS program should be modified upon remand…………..11

   VI.  Conclusion…...........................................................................................…12

**TABLE OF AUTHORITIES**                                                    **PAGE**

*Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) ................................. 4, 5

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984)…................. 2,3,11

*Consolidated Edison Corp. v. Labor Board, 305 U.S. 197, 229 (1938)* ................................................. 4

*Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488. ........................................................................................................................................... 4

*Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) ............................. 5, 6

*Fujitsu Gen. Ltd. v. United States,* 88 F.3d 1034, 1038 (Fed. Cir. 1996) ............................................ 3

*Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) ........................................... 4

*Jinan Yipin Corp. v. United States*, 637 F. Supp. 2d 1183, 1192 (Ct. Int'l Trade 2009) ..................... 5

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ....................................... 6

*Marine Harvest (Chile) S.A. v. United States, 244 F. Supp. 2d 1364, (Ct. In'l. Trade, 2002)* ..... 15,16

*National Cable & Telecommunications Ass'n v. BrandXInternet Services,* 545 U.S. 967, 982-983 (2005) ..................................................................................................................................................... 3

*Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002 ................................................. 6

*PesqueraMares Australes Ltda. v. United States,* 266 F.3d 1372, 1379 (Fed. Cir.2001) .................... 3

*SKF USA. Inc. v. United States. 254 F.3d 1022, 1028 (Fed. Cir. 2001)* ............................................. 6

*Skidmore v. Swift & Co.,* 323 U.S. 134 (144). *See United States v. Mead Corp.,* 533 U.S. 218, 228 (2001) ………………………………………………………………………………….3, 4

*Shakeproof Assembly Components Div. of Ill. Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001) ...............................................................................................................5,7

*Thai Pineapple Canning Indus. Corp. v. United States, 273, F.3d 1077, 1085 (Fed. Cir. 2001)* .......5

*Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004).....................................6

*United States v. Mead Corp.,* 533 U.S. 218, 228 (2001)........................................................................3

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938)..........................................................................................4

*USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). 46

*Valkia Ltd. v. United States*, 28 CIT 907, 2004 Ct. Intl. Trade LEXIS 66; Slip Op 2004-71.............14

*Wheatland Tube Co. v. U.S.,* 495 F.3d 1355, 1361 (Fed. Cir. 2007).....................................................3

## FEDERAL STATUTES

19 U.S.C. § 1516a(2)(B)(1)(B)...............................................................................................................1

19 U.S.C. § 1516a(b)..............................................................................................................................2

19 U.S.C. § 1677m(d) and (3) ................................................................................................................2

## I.    <u>INTRODUCTION</u>

The U.S. Department of Commerce failed to use substantial evidence on the record to calculate, for U.S. sales, the correct values for ocean freight and marine insurance.  As a result, Commerce erroneously thought that these two expenses had offsetting income to Suncity Metals and Tubes Private Limited ("Suncity").  This was not the case, as demonstrated in various submissions to Commerce made by Suncity.

Further, since Suncity has no offsetting income to the expenses for ocean freight and marine insurance, the use of a "cap" by Commerce to limit what Commerce thought was a benefit regarding the non-existent income associated with these two expenses is unwarranted.  Since there was no additional income to Suncity regarding ocean freight and marine insurance, there can be no "cap" to offset that phantom income.

In sum, Commerce's final results were not predicated on substantial evidence on the record and not otherwise in accordance with law.

## II. <u>STATEMENT PURSUANT TO RULE 56.2(c)</u>

### A.  The Administrative Determination under Review

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest the Commerce Department's ("Commerce," or "the Department," or "DOC") Final affirmative antidumping duty final results regarding its administrative review of welded stainless pressure pipe from India.  *See Welded Stainless Pressure Pipe From India: Final Results of Antidumping Duty Administrative Review: 2022-2023,* (90 Fed. Reg. 44041) issued September 5, 2025, and published on September 11, 2025,   P.R.  83 (published),  and accompanying Issues and Decision Memorandum ("IDM") (September 5, 2025) ("*Final Results*") P.R. 80. P.R. refers to the Department's public record; "C.R." refers to the confidential record).

Commerce determined a rate of 21.77 percent.

**B.  Issue of Law Presented**

There is one issue presented: (1) whether the Department's calculation methodology regarding two expenses associated with U.S. sales, ocean freight and marine insurance, included income to Suncity beyond that reflected in the delivered, duty paid ("DDP") price and, if not, whether this phantom income should have been added to the U.S. price and offset (capped) by certain expenses. Suncity argues that no income was derived by Suncity in this regard.  Thus, Commerce's methodology was not predicated on substantial evidence on the record and not otherwise in accordance with law.

**C.  Summary of Arguments**

First, Suncity's responses were misinterpreted by the Department.  Suncity's use of the term "recovered," "recovery,"  and "income," contrary to Commerce's belief, did not apply to any additional income earned by Suncity regarding two U.S. expenses: ocean freight and marine insurance beyond what is included in the "delivered, duty paid price" ("DDP"). Thus, inclusion of such phantom income as well as associated "capping" of that phantom income, was unwarranted and not predicated on substantial evidence on the record.

### III. **STATEMENT OF FACTS RELEVANT TO THE ISSUES**

The statement of facts relevant to this issue is presented as an introduction to the substantive arguments discussed below.

### IV.     **STANDARD OF REVIEW.**

The courts will hold unlawful Commerce determinations that are unsupported by substantial evidence on the record or are not otherwise in accordance with law.  19 U.S.C. § 1516a(b). To determine whether Commerce's interpretation and application of 19 U.S.C. §

1673d(c)(5) is "in accordance with law," the courts review the statute to determine whether "Congress has directly spoken to the precise question at issue."

While *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842 (1984) used to control those situations where congressional intent was not clear, that was overturned by *Lope Bright Enters. v. Raimondo*, 603 U.S. 369 (2024). (holding *Chevron* cannot be reconciled with the APA by presuming that statutory ambiguities are implicit delegations to agencies. That presumption does not approximate reality." (*Loper* at 373).  Thus *Loper* overruled *Chevron*.  "*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. (*Loper* at 412).

Under the standard of review established in *Skidmore,* "{t}he weight {accorded to an administrative} judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.,* 323 U.S. 134, at 140.

The courts will uphold a final determination by Commerce unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B).  "[S]ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951), *quoting Consolidated Edison Corp. v. Labor Board*, 305 U.S. 197, 229 (1938).  Furthermore, "substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted).

Thus, the courts have stated that "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to [   ] view.'" *Diversified Products Corp. v. United States*, 6 CIT 155, 161 (1983) *quoting Universal Camera*, 340 U.S. at 488.

Moreover, the Commerce determination cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence." *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). The substantial evidence standard requires more than mere assertion of 'evidence which in and of itself justified {the determination}, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn.'" *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 720 (Fed. Cir. 1997) (citation omitted).

Commerce also must make its decisions based on a fair and balanced comparison of the data. To do otherwise is arbitrary and capricious. *See Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556 (Fed. Cir. 1984) at 1562 ("substantial evidence" must be measured by the record as a whole, "including whatever fairly detracts from the substantiality of the evidence.")

Commerce is required to objectively evaluate all data on the record. Thus, it must hold its preferences to the same test as it uses to evaluate respondent's proffered data. This analysis must consider the strengths and weaknesses of all the data and then choose the best available information. *See, e.g., Dorbest Ltd v. United States*, 462 F. Supp. 2d 1262, 1302 (Ct. Int'l Trade 2006) (holding that Commerce must justify its decisions).

In addition, Congress intended that Commerce calculate dumping margins as accurately as possible and use the best available information. *See Shakeproof Assembly Components Div. of*

*Ill. Tool Works v. United States*, 268 F.3d 1376, 1382 (Fed. Cir. 2001).

Moreover, "while various methodologies are permitted by the statute, it is possible for the application of a particular methodology to be unreasonable in a given case when a more accurate methodology is available and has been used in similar cases." *Thai Pineapple Canning Indus. Corp. v. United States*, 273, F.3d 1077, 1085 (Fed. Cir. 2001). Additionally, "to avoid distortions, the Department must consider all relevant factors, including those not present in most antidumping determinations." *Id.*

Further, when substantial evidence is not utilized, such action is tantamount to the use of speculation to make a determination. . *See Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute 'substantial evidence.'" (quoting *Novosteel SA v. United States,* 284 F. 3d 1261, 1276 (Fed. Cir. 2002) (internal quotation marks omitted)).

In addition, it is axiomatic that Commerce may not exert its authority in an arbitrary or capricious manner. *See, e.g., Tung Mung Dev. Co., v. United States*, 354 F.3d 1371, 1378 (Fed. Cir. 2004). Commerce's decision will be set aside if it is arbitrary and capricious. *See, e.g.*, *SKF USA. Inc. v. United States*. 254 F.3d 1022, 1028 (Fed. Cir. 2001). "{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, and that "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou Wujin Fine Chem. Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1377 (Fed. Cir. 2012) (hereafter *Changzhou*) (quoting *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974).

## V.    ARGUMENT.

### A.  Facts

> **i.**     **Suncity did not recover or earn income regarding U.S. expenses for ocean freight or marine insurance beyond that reported in the DDP price contained in Field 18.3 of the Section C database.**

There are several instances in Suncity's submissions, in which it discussed "recovery" and/or "revenue" regarding  two expenses related to U.S. sales: (1)  ocean freight, and (2) marine insurance.  We cite them below.

As stated in Suncity's Section A Initial Questionnaire Response ("IQR") (March 30, 2024,  at Page 2), all U.S. sales were on Delivered Duty Paid (DDP) terms, the definition of which includes freight, duties (and associated expense, *e.g,* harbor maintenance and merchandise processing fees), and insurance. C.R.  4; P.R. 39.

There is no evidence on the record to suggest that Suncity earned any income related to ocean freight and marine insurance over and above that which is included in the DDP price, as demonstrated herein.  Given that, there is nothing to be capped by Commerce.

In India, people speak English differently from people in the U.S.  In India, "recovery" refers to "expenses."  "Income," in this context refers to "addition" to something.  Thus, Commerce well understood that DDP equaled the sum of Fields 18, gross unit price (on an FOB basis) + Field 18.1 (freight and duty expense) + Field 18.2 (insurance expense).  That part of Commerce's SAS program was done correctly in the final results.

What is not predicated on substantial evidence is Commerce's belief that there was some income relative to ocean freight and marine insurance to Suncity in addition to that included in the DDP price received from the U.S. customer and that it should be capped (limited).  There is nothing on the administrative record, in addition to the expenses reported above, to demonstrate any income to Suncity over and above the DDP price received from the U.S. customer.  Therefore, the "capping" language in the SAS program used to calculate the dumping margin in the final results should be removed.

This issue also is addressed in the following responses submitted by Suncity.

6

- At page 23 of IQR to Section C filed on April 22, 2024, in response to Field No. 18 "Gross Unit Price".

Suncity stated:

> In this field Suncity has reported the gross unit price as per invoice in USD per KG calculated on theoretical weight basis. Further, Suncity also recovered freight and insurance from customers which are revenue for Suncity (and are to be added to the Field No 18 GRSUPRU to calculate the margin) and reported as below:
>
> 1. Field No 18.1 GRSUPRU1 (USD): Freight reported
> 2. Field No 18.3 GRSUPRU2 (USD): Insurance

C.R.10; P.R. 48.

Accordingly:

- Field 18 is Gross Unit Price (on an FOB basis),

- Field 18.1 is Freight Recovered, which includes duties recovered, *i.e,* freight and duty <u>expenses</u>, added to Field 18, and

- Field 18.2 is Insurance Recovered, *i.e.,* insurance <u>expense</u> added to Field 18.

Thus, Fields 18.1 and 18.2 are merely break-out components of the total DDP invoice value reported in Field 18.3 (also including CVD duties), not separate or additional revenues. Nowhere on the record is there a scintilla of evidence to support a reasonable conclusion that "recovery" means "income" in addition to the DDP invoice price – not a single field in the Section C database.

Suncity provided its databases in Excel format. Regarding this issue, the formula in field 18.3 in the Section C database shows that the DDP price (plus CVD duties) located in Field 18.3 equaled the sum of Fields 18 + 18.1 + 18.2. Commerce understood this and correctly used field 18.3 as the DDP price (plus CVD duties).

Suncity provided a sample Invoice on the record (Exhibit C-22 of the Section C IQR) to demonstrate that Field 18.1 and Field 18.2 are merely a break-out of components of the total DDP invoice value. C.R. 10; P.R. 48. That exhibit contains Table 1 – Invoice vs. Section-C Database. One invoice, ([46]) on record of administrative review,

7

- *See* Exhibit C-26 of IQR wherein Suncity shows the sum of Field 18, Field 18.1 and Field 18.2

  at column titled as "Invoice value (in USD)" is [USD ******] and

Exhibit C-27, copy of invoice, shows the total invoice value of [USD ******].  The DDP invoice value is

contained in the Section C database in (SEQUs 245 through SEQU 251) observations.

Exhibit C-26, read with Exhibit C-27, clearly shows the sum of Field 18, Field 18.1 and Field 18.2

is DDP value of Invoice.  This proves that the "recovered freight" and "recovered marine insurance" are

simply freight and marine insurance <u>expenses</u> and not separate income to Suncity over and above the

DPP invoice price charged to the customer.

The "recovered" amounts are only "income" (that is, revenue) to Suncity in the sense that they are

simply part of the total revenue to Suncity that it receives as part of the DDP price.  They are not separate

or additional revenue to Suncity in addition to the DDP price.  Indeed, nowhere in any of the Section C

databases submitted to Commerce did Suncity report any additional "revenue" or type of offset regarding

freight and marine insurance. Thus, the total revenue (income) earned by Suncity for each U.S. sale is

comprised solely of the income (revenue) obtained via the DDP price.

- At page 7 and Page 8 of third Supplemental Response filed on January 7, 2025, Suncity

  stated:

"Suncity wishes to mention the following:
- Suncity inserted row below Field Name to show the title of formulae
- Suncity inserted Field No 18.3 titled as "Adjusted Gross Unit Price" GRSUPRU3 to calculate adjusted Gross Unit Price and to calculate the adjusted Gross Unit Price, Suncity added the following:
- Field No. 18"Gross Unit Price" GRSUPRU,
- Field No. 18.1 "Freight Recovered" GRSUPRU1. This is revenue for Suncity as it includes the amount of freight and duties recovered on invoice from customers,
- Field No. 18.2 "Insurance Recovered on the Invoice" GRSUPRU2. This is revenue for Suncity as it is the amount of insurance recovered on invoice from customers, and
- Field No. 60.1 "CVD Duties" CVDU."

C.R. 27-34; P.R. 69.

- Third Supplemental Response filed dated January 7, 2025, page 12.  Suncity explicitly

8

stated that "Field 18.1 ("Freight Recovered") includes freight recovered and duties recovered."

"And thus, the value in Field No. 18. 1 comprises not only freight but also duties and such duties are custom duties 25%, AD 8.35% and CVD 4.65%."  C.R. 27-34; P.R. 69.

### B.  Argument

i.      **Suncity did not earn additional income related to ocean freight or marine insurance beyond what is contained within the DDP price.**

The facts, as stated in Suncity's original submissions, and clarified in its later submissions, clearly show that Suncity did not earn any income concerning U.S. ocean freight and marine insurance expenses beyond what was charged to the U.S. customer via the DDP price on the sales invoice.

A practical problem here is one of semantics.  Indians speak of "recovery" in different terms from Americans.  For "Recovery" and "income," in terms of its submission to Commerce, Suncity was trying to break out the components of DDP price by creating Field No. 18.1 and Field No. 18.2 just for convenience of the Commerce.  Commerce simply misinterpreted the data in these two fields as somehow also pertaining to additional income to Suncity over and beyond these costs which are an integral part of the DDP price.  As a result of Commerce's misinterpretation, it believed it needed to cap these phantom incomes.  Since there was no such additional income to Suncity, the U. S. sales of Suncity are on DDP basis, capping was not required and, in fact, caused Commerce to not calculate the dumping margin as accurately as possible.

It is clear that, as Suncity began to understand Commerce's misinterpretation, it clarified what it meant by "recovery" and "revenue."  Yet nowhere in the final IDM, does Commerce justify its treatment of this so-called "recovery"  and/or "revenue" as income to Suncity.  That

9

is, Commerce refers to <u>no additional fields</u> in the Section C database to support its view that somewhere there was additional income regarding ocean freight or marine insurance over and above that contained within the DDP price, which should be capped.

Fields 18.1 and 18.2 cannot be both integral expenses contained within the DDP price (in Field 18.3) and, simultaneously, be viewed as extra income to Suncity in addition to the DDP price.

As the Department is aware, it is tasked with calculating dumping margins as accurately as possible. *See Shakeproof.* This was not done in the underlying administrative review. Commerce is required to objectively evaluate all data on the record. Thus, it must hold its preferences to the same test as it uses to evaluate respondent's proffered data. This analysis must consider the strengths and weaknesses of all the data and then choose the best available information. *See, e.g., Dorbest Ltd,* (holding that Commerce must justify its decisions); *also see Shakeproof* at 1382 (holding that Commerce must use the best available information).

It is axiomatic that Commerce must consider that respondents, especially in their early responses to questionnaires, will make mistakes and correct those mistakes in later responses, or, as the case may be, clarify what the intent of their language is if certain statements seem not clear or confusing. Commerce has to recognize these situations and allow respondents to correct such issues. In other words, Commerce has to allow respondent to "act to the best of their ability" in compliance with the Statute. *See* 19.U.S.C. 1677m(d) and (e).

> **ii.**    **Since Suncity did not earn additional income related to ocean freight or marine insurance, there is nothing to "cap" (no income to limit via expenses) in Commerce's calculation methodology.**

Since substantial evidence on the record clearly demonstrates that Suncity did not earn any income from ocean freight and marine insurance expenses, beyond what is contained in

the DDP price, there is nothing to offset such phantom income via a "cap" (limit) on that non-existent revenue.

By capping this so-called income, Commerce has compounded this problem and created dumping margins where none should exist.  This is not reasonable and not predicated on substantial evidence on the record.

As a  result of *Loper*, the courts no longer are required to give any deference to Commerce's interpretation of the Statute.  The courts may now weigh the evidence on the record and select the appropriate evidence as substantial evidence.  *Skidmore* teaches us that the weight of an agency decision will be based on the thoroughness of that decision, the validity of its reasoning, etc.  *Skidmore* at 140.

Since there is not even a scintilla of evidence that Suncity earned any income regarding expenses for ocean freight and marine insurance, beyond what is included in the DDP price, likewise, there is no valid reason to apply a "cap" on that phantom revenue.  *See* 19 U.S.C. 1516a(b)(i)(B).  *Also see Universal Camera* at 477, *quoting Consolidated Edison* at 229.

Measuring the record of the underlying administrative review as a whole, it is abundantly clear that Commerce's final results regarding the capping issue are not predicated on substantial evidence.  *See Atlantic Sugar* at 1562. Therefore, Commerce's decision in this regard is not reasonable.  *See Fujitsu* at 1038.

Finally, Commerce's determinations cannot be based on "isolated tidbits of data which suggest a result contrary to the clear weight of the evidence."  *See USX Corp* at 489.

As a result, Commerce did not objectively evaluate all data on the record.  Commerce is required to evaluate all data on the record and consider its strengths and weaknesses and then choose the best available information.  *See Dorbest* at 1302.  In other words, Commerce must justify its decisions.

### iii.    Commerce's SAS program should be modified upon remand.

Commerce ran the margin calculations using a SAS program. C.R. 39.  Lines 9090 through 9099 constitute the capping portion of that program.  They should be removed.  All other parts of that program will then calculate a dumping margin for Suncity as accurately as possible.

## VI.    <u>CONCLUSION AND RELIEF REQUESTED.</u>

For the forgoing reasons, Suncity requests that the Court grant is Rule 56.2 Motion for Judgment Upon the Agency Record because Commerce's actions as described above were unsupported by substantial evidence and otherwise not in accordance with law.

<u>*/s/ John J. Kenkel*</u>
John J. Kenkel
International Trade Law Counselors, PLLC
8647 Richmond Hwy.
Suite 623
Alexandria, Va. 22309
*Counsel to Suncity Metals and Tubes Private Limited*

Dated: April 3, 2026

12